IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DOUGLAS W., <br><br> Plaintiff, <br><br> v. <br><br> MARTIN J. O'MALLEY, Commissioner of Social Security, <br><br> Defendant. | MEMORANDUM DECISION AND ORDER <br><br><br> Case No. 4:23-cv-00073-PK <br><br> Magistrate Judge Paul Kohler |

This matter comes before the Court on Plaintiff Douglas W.'s appeal from the decision of the Social Security Administration denying his application for disability and disability insurance benefits.[1] The Court AFFIRMS the administrative ruling.

I. STANDARD OF REVIEW

This Court's review of the administrative law judge's ("ALJ") decision is limited to determining whether the findings are supported by substantial evidence and whether the correct legal standards were applied.[2] "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[3] The ALJ is required to consider all of the evidence, although the ALJ is not required to discuss all of the evidence.[4] If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed.[5] The Court must evaluate the record as a whole, including the evidence before the ALJ

---

[1] Docket No. 8.

[2] *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000).

[3] *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

[4] *Id.* at 1009–10.

[5] *Richardson*, 402 U.S. at 390.

1

that detracts from the weight of the ALJ's decision.[6] However, the reviewing court should not re-weigh the evidence or substitute its judgment for that of the Commissioner.[7]

## II. BACKGROUND

A.     PROCEDURAL HISTORY

On January 7, 2021, Plaintiff filed an application for disability and disability insurance benefits, alleging disability beginning on June 30, 2012.[8] Plaintiff's date last insured was December 31, 2017.[9] The claim was denied initially and on reconsideration.[10] Plaintiff then requested a hearing before an ALJ.[11] Two hearings were held on July 6, 2022, and on January 18, 2023.[12] On February 17, 2023, the ALJ found that Plaintiff was not disabled.[13] The Appeals Council denied review on July 24, 2023,[14] making the ALJ's decision the Commissioner's final decision for purposes of judicial review.[15]

On September 12, 2023, Plaintiff filed his complaint in this case.[16] That same day, both parties consented to a United States Magistrate Judge conducting all proceedings in the case, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth

---

[6] *Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).

[7] *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).

[8] R. at 10, 239–45.

[9] *Id*. at 12.

[10] *Id*. at 70–78, 90–93, 95–99.

[11] *Id*. at 100–01.

[12] *Id.* at 31–69.

[13] *Id.* at 7–23.

[14] *Id.* at 1–6.

[15] 20 C.F.R. §§ 416.1481, 422.210(a).

[16] Docket No. 1.

Circuit.[17] The Commissioner filed an answer and the administrative record on November 13, 2023.[18]

Plaintiff filed his Opening Brief on December 13, 2023.[19] The Commissioner's Answer Brief was filed on March 5, 2024.[20] Plaintiff filed his Reply Brief on March 19, 2024.[21]

B.  MEDICAL EVIDENCE

Plaintiff sought disability based on bilateral hip degeneration, high blood pressure, and glaucoma.[22] Plaintiff claimed he injured his hip while playing college football.[23] Plaintiff sought treatment for left hip pain in February 2013.[24] He reported having pain off and on for years but indicated that the pain had worsened over the past several months.[25] Dr. Lenthe noted that Plaintiff presented with an antalgic gait and exhibited hip pain with internal rotation.[26] Imaging revealed abnormal morphology of the femoral head and neck junction with an anterolateral bump suggesting femoral acetabular impingement in both hips.[27] The joint space appeared relatively preserved.[28] Despite these concerns, Plaintiff was still very active and reported running two miles

---

[17] Docket No. 5.
[18] Docket No. 7.
[19] Docket No. 8.
[20] Docket No. 15.
[21] Docket No. 16.
[22] R. at 71.
[23] *Id*. at 398.
[24] *Id*.
[25] *Id*.
[26] *Id*. at 399–400.
[27] *Id*. at 402.
[28] *Id*.

the day before his doctor's visit.[29] Dr. Lenthe advised that Plaintiff cross-train to allow his hip to rest.[30] In March 2013, Plaintiff underwent a treadmill stress test for nearly 11 minutes.[31]

In May 2015, Plaintiff reported he was still exercising routinely.[32] In September 2017, Plaintiff reported engaging in international travel.[33]

Medical records in 2018—outside the relevant period—contain contradicting information about Plaintiff's hip pain. In one record from October 2018, Dr. Foote noted that Plaintiff had been suffering with hip pain for many years.[34] Prior x-rays showed some degeneration changes around 2013.[35] Dr. Foote found significant degenerative arthritis of the left hip but also noted that Plaintiff's bilateral hip pain was minimal with range of motion.[36] Imaging showed only moderate degenerative changes to Plaintiff's hips, with some degenerative osteophytic spurring along with slight narrowing of the joint space with sclerosis of the articulating surfaces, but no fracture dislocation.[37]

Plaintiff underwent stem cell injections in 2019 and reported "significant improvement in his hips . . . [r]egarding his pain and activity levels."[38] In October 2019, Plaintiff again reported the stem cell injections were working quite well and indicated he was more active than before.[39]

---

[29] *Id*. at 398.
[30] *Id*. at 400.
[31] *Id*. at 403.
[32] *Id*. at 416.
[33] *Id*. at 427.
[34] *Id*. at 435.
[35] *Id*.
[36] *Id*. at 436–37.
[37] *Id*. at 378, 440.
[38] *Id*. at 442.
[39] *Id*. at 445.

In February 2020, imaging showed that both of Plaintiff's hip joints exhibited very advanced progressive bilateral osteoarthritis compared with the study from February 2013 despite some improvement from the stem cell injections.[40] In September 2020, Dr. Foote noted that Plaintiff appeared to be moving towards hip replacement.[41] In November 2020, Plaintiff was trying to stay active but presented with a guarded gait secondary to hip discomfort.[42] Plaintiff was planning on bilateral hip replacement surgery in January and February of 2021.[43]

In 2021, Plaintiff used walking sticks and/or a walker to ambulate following replacement surgery of his left hip.[44] Records indicate Plaintiff had severe degenerative arthritis with periarticular spurs and absence of articular cartilage in the joint.[45] Plaintiff reported having a 53-year history of right hip pain that comes on spontaneously.[46] He reported having limited motion, popping, and tenderness, but was engaging in strengthening exercises at home.[47] In June 2021, Plaintiff reported doing much better and feeling "very agile" following his bilateral hip replacement surgeries.[48] Based on "history" and review of x-rays, Dr. Foote indicated that Plaintiff's hips had prevented him from working since about 2012.[49] Dr. Foote's office obtained x-rays of Plaintiff's hips in 2018 and 2021.[50] In December 2021, Plaintiff reported that both hips

---

[40] *Id*. at 377.
[41] *Id*. at 454.
[42] *Id*. at 458–59.
[43] *Id*.
[44] *Id*. at 495, 510, 517.
[45] *Id*. at 502, 521.
[46] *Id*. at 504, 523, 526.
[47] *Id*.
[48] *Id*. at 538–39.
[49] *Id*. at 538, 540.
[50] *Id*.

5

were doing great and that he had gotten back into his sports and rode 30 miles on his bike recently.[51] He was no longer using assistive devices to ambulate.[52]

C. HEARING TESTIMONY

At the initial hearing, Plaintiff testified that he attended college and completed some vocational training for hair dressing.[53] He testified that he worked as a schoolteacher.[54] He testified that he began developing problems with his hips when he played college football.[55] He claims that his left leg is six inches smaller than his right leg.[56] Plaintiff testified that his hip pain made it difficult to sit, stand, and sleep.[57] He testified that at first he could work around the house for two hours a day, but then his mobility and pain restricted him to only one hour of chores a day.[58] Plaintiff testified that he tried to stay as active as possible to keep his joints loose, but that he also had a limp because of his left hip pain.[59] He also tried stem cell treatment in 2020.[60] Plaintiff eventually underwent bilateral hip replacement surgery which improved his hip pain immensely.[61]

---

[51] *Id*. at 569.
[52] *Id*. at 575.
[53] R. at 51–52.
[54] *Id*. at 53.
[55] *Id*. at 56.
[56] *Id*.
[57] *Id*. at 57, 62.
[58] *Id*.
[59] *Id*. at 58–59, 61, 63.
[60] *Id*. at 59–60.
[61] *Id*. at 59.

At the supplemental hearing, Plaintiff testified that he spent most of the relevant period laying down, sitting down, and occasionally exercising.[62] He confirmed that he had traveled with family to Haiti and Hawaii, but stated that he was in pain for a majority of the time on both trips.[63]

Dr. Mark Stevens testified as a medical expert at the supplemental hearing.[64] Dr. Stevens opined that although there was limited objective medical and other evidence for the relevant period of February 27, 2013, to December 31, 2017, he had enough evidence to form medical opinions about the nature and severity of Plaintiff's claimed impairments.[65] The medical expert testified that there wasn't much evidence that Plaintiff was significantly disabled in the relevant period, but that some limitations would apply to that timeframe.[66] For example, Dr. Stevens opined that during the relevant period, Plaintiff could lift and carry less than 10 pounds continuously, and occasionally up to 30 pounds. Additionally, Plaintiff could sit for six hours, stand for one hour, and walk for one hour.[67] Dr. Stevens opined that a cane might be useful for long distance walking.[68]

D.   THE ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process in deciding Plaintiff's claim. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date of June 30, 2012, through his date last insured of December

---

[62] *Id*. at 35–36.
[63] *Id*. at 37–38.
[64] *Id*. at 40–44.
[65] *Id*. at 41–42.
[66] *Id*. at 42–43.
[67] *Id*. at 43.
[68] *Id*.

7

31, 2017.[69] At step two, the ALJ found that Plaintiff suffered from the following severe impairments: osteoarthritis of the hip and obesity.[70] At step three, the ALJ found that Plaintiff did not meet or equal a listed impairment.[71] The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work with certain restrictions.[72] At step four, the ALJ concluded that Plaintiff had past relevant work as a teacher.[73] The ALJ concluded that Plaintiff's RFC did not preclude performance of those work-related activities.[74] Since the ALJ concluded that Plaintiff could perform his past relevant work, he concluded that Plaintiff was not disabled and did not reach step five.[75]

III. DISCUSSION

Plaintiff argues that the ALJ erred by failing to evaluate the medical opinions from the medical expert, Dr. Mark Stevens, and Plaintiff's treating physician, Dr. Stephen Foote.[76]

An ALJ is not required to defer to or give any specific weight to medical opinions or prior administrative medical findings.[77] Rather, the ALJ considers them using the criteria in 20 C.F.R. § 404.1520c(c): (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors tending to support or contradict a medical opinion or prior

---

[69] *Id.* at 12.

[70] *Id.* at 12–13.

[71] *Id.* at 13.

[72] *Id.* at 13–17.

[73] *Id.* at 17.

[74] *Id.* at 17–18.

[75] *Id.* at 18.

[76] Plaintiff's briefing and the ALJ incorrectly refer to Dr. Foote as Dr. Fodne.

[77] 20 C.F.R. § 404.1520c(a).

8

administrative medical finding.[78] The most important criteria for determining persuasiveness are supportability and consistency.[79]

The ALJ must articulate "how persuasive [he or she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record."[80] The ALJ must explain how they considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings, but they are generally not required to explain how they considered other factors.[81] Social Security Ruling 96-8p emphasizes that "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."[82] "The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence."[83]

The ALJ repeatedly emphasized that he focused on the evidence from the relevant period—June 30, 2012, to December 31, 2017—in making his decision.[84] After considering the entire record, the ALJ concluded that Plaintiff's impairments were not disabling during the relevant period.[85] In reaching that conclusion, the ALJ carefully considered the opinions of Doctors Mark Stevens and Stephen Foote.

---

[78] *Id.* § 404.1520c(c).

[79] *Id.* § 404.1520c(a), (b)(2).

[80] *Id.* § 404.1520c(b).

[81] *Id*. § 404.1520c(b)(2).

[82] SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

[83] *Id.*; *see also Givens v. Astrue*, 251 F. App'x 561, 568 (10th Cir. 2007) ("If the ALJ rejects any significantly probative medical evidence concerning [a claimant's] RFC, he must provide adequate reasons for his decision to reject that evidence.").

[84] R. at 14, 16–17.

[85] *Id*. at 14.

The ALJ found Dr. Stevens' opinions partially persuasive. In making this determination, the ALJ adequately articulated whether Dr. Stevens' findings were supported by or consistent with the other evidence in the record.

Dr. Stevens' finding that the claimant could perform some work during the relevant period was consistent with Plaintiff's conservative treatment, minimal complaints during exams, and generally unremarkable physical exam findings.[86] Additionally, his opinion that Plaintiff was disabled for a time from 2020 to 2021 was consistent with imaging showing severe hip degeneration and Plaintiff's need for two total hip replacement surgeries.[87] However, the ALJ correctly concluded that such "disability" was irrelevant because it occurred outside the relevant period.[88]

The ALJ found that the remainder of Dr. Stevens' opinions were not as supported by the relevant, objective evidence in the record. First, Dr. Stevens' opinion that Plaintiff would have some standing and walking limitations were inconsistent with Plaintiff's reports that he exercised regularly, used the elliptical machine, ran two miles, and ran for 10 minutes during a stress test.[89] Second, Dr. Stevens' opinion that Plaintiff would need a cane was unsupported by relevant evidence; Plaintiff never used a cane or ambulatory device at any exam during the relevant time period[90] Finally, Dr. Stevens' opinions about impairments after the relevant period are unpersuasive and irrelevant.[91]

---

[86] *Id*. at 15–17.
[87] *Id*.
[88] *Id*. at 17.
[89] *Id*. at 15–17.
[90] *Id.* at 15–16.
[91] *Id*. at 17.

The ALJ also found Dr. Foote's opinions partially persuasive, especially since Dr. Foote examined Plaintiff himself. But Dr. Foote's more restrictive limitations such as sitting, standing, and walking were inconsistent with Plaintiff's reported physical activity levels and unsupported by the observations noted in the medical records for the relevant time period. Like Dr. Stevens, Dr. Foote also focused on Plaintiff's functionality *after* 2017, which is irrelevant.

This case poses a unique situation because there are so few medical records from the relevant time period and a clear worsening of conditions after the relevant period. When looking at the whole record, it may appear that the evidence supports more restrictions than identified by the ALJ since Plaintiff's condition worsened over time, but this Court and the ALJ are bound by the relevant time period, 2012 to 2017.[92] The evidence from this period does not support a finding of disability.

Plaintiff argues that the ALJ erred in evaluating the doctors' opinions. First, Plaintiff claims the ALJ erred because he found Dr. Stevens' and Dr. Foote's opinions to be only partially persuasive. While Plaintiff points to evidence that support standing, walking, and sitting limitations, he ignores the evidence that weighs against those limitations. In situations like this, where there is evidence in the record that could support a finding of disability and evidence to support the opposite conclusion, the Court is prohibited from reweighing the evidence.[93] Where there is substantial evidence to support the ALJ's findings, the Court cannot reverse the ALJ just

---

[92] *Potter v. Sec. Health & Human Servs.*, 905 F.2d 1346, 1348–49 (10th Cir. 1990) (stating that "the relevant analysis is whether the claimant was actually disabled prior to the expiration of her insured status.")

[93] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotation marks and citation omitted). ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.")

because he could have made a different decision.[94] Here, the ALJ adequately explained why the more limiting medical opinions were inconsistent with the record, and that conclusion is supported by substantial evidence.

Next, Plaintiff argues that the ALJ incorrectly evaluated Plaintiff's physical capabilities based on his exercise and travel during the relevant period. Plaintiff claims that just because he engaged in exercise and some travel doesn't mean he should have zero standing, sitting, or walking limitations. In essence, Plaintiff implies that he was less active than the ALJ perceived him to be, and thus the Court should find the ALJ's decision was an error. But Plaintiff is really asking the Court to reweigh the evidence of Plaintiff's physical capabilities and come to a different conclusion, something this Court cannot do. The ALJ gave good reasons, supported by substantial evidence, to support his assessment of the medical opinion evidence. As such, his opinion is free from harmful error and the Commissioner's decision is affirmed.

## IV. CONCLUSION

Having made a thorough review of the entire record, the Court AFFIRMS the Commissioner's decision.

DATED this 28th day of May, 2024.

BY THE COURT:

_____
PAUL KOHLER
United States Magistrate Judge

---

[94] *Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990) ("We must evaluate the record to ascertain whether there is evidence to support the ALJ's decision, regardless of whether we would have reached a different result based on the record.")